UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS PARTIDA,<br><br>               Petitioner,<br><br>     v.<br><br>CRAIG KOENIG, Warden,<br><br>               Respondent. | No.  2:20-cv-0583 TLN AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the original petition, ECF No. 1, which challenges petitioner's 2015 conviction for attempted murder and aggravated mayhem.  Respondent has answered.  ECF No. 13.  Petitioner did not file a traverse.

                                                    BACKGROUND

I.       Proceedings in the Trial Court

     A.   Preliminary Proceedings

Petitioner was charged in Sacramento County with attempted murder (Cal. Pen. Code §§ 664, 187(a)) and aggravated mayhem (§ 205).  The prosecution further alleged that the attempted murder was premeditated (§ 664(a)), that petitioner personally used a firearm during the commission of the crimes (§ 12022.53(b)), and that he used a deadly weapon (§ 12022(b)(1)).  Petitioner pleaded not guilty and denied the sentencing enhancement allegations.

1

     B. <u>The Evidence Presented at Trial</u>

         1. <u>Prosecution Case</u>

The jury heard evidence of the following facts.[1] In December 2014, petitioner's adult daughter, A.P., began dating her coworker, M.M. A.P. was approximately 33 years old and M.M. was approximately 55. Petitioner did not approve of the relationship. He did not like M.M. and thought M.M. was too old for his daughter. Petitioner told M.M. not to see A.P. anymore. A.P. and M.M. ignored petitioner's request and continued to date, angering defendant.

On May 20, 2015, around 10:00 p.m., M.M. left his house on foot to meet A.P. after work. M.M. owned two guns, but he generally kept them in a storage unit. He did not bring them with him that night. As M.M. reached the entrance to a park near his house, petitioner "came out of the bushes" and approached him. Petitioner said he wanted to talk about A.P. and insisted they go into the park, rather than stay on the sidewalk. Petitioner grabbed M.M. by the shirt and led him into the park.

It was dark inside the park, which was closed. Petitioner directed M.M. to walk up a hill; he continued to hold onto M.M.'s shirt and they continued to talk about A.P. The two came to a stop near a tree. M.M. took out his phone to get petitioner's phone number so they could talk further at another time, but petitioner grabbed the phone. Petitioner then told M.M. to get down on his knees. M.M. complied. Now on his knees, M.M. felt something like a gun being pressed against the back of his head. M.M. prayed silently and told petitioner about his family back in Boston, pleading for his life. M.M. promised to leave A.P. and return to Boston. Petitioner did not respond. Petitioner then slashed M.M.'s throat with a knife. M.M. grabbed his throat and fell to the ground trying to play dead. Petitioner continued to attack.

Petitioner shoved M.M., who looked to his right side and saw petitioner raise his arm to stab him again. Petitioner stabbed him again, this time in the right armpit and chest area. M.M., still holding his throat, was able to run from petitioner and out of the park, calling for help.

////

---

[1] This summary is adapted from the opinion of the California Court of Appeal, Lodged Doc. 10 (ECF No. 14-10) at 2-4. The undersigned finds the recitation of facts to be accurate.

Petitioner chased him.  M.M. was able to reach a house with an open door, where he asked for help.  The occupants gave him a towel and called 911.

M.M. was taken to the hospital.  In addition to cutting M.M.'s throat, petitioner had cut M.M.'s face from the left corner of his mouth to his ear.  M.M. did not remember his face being cut.  Both injuries left visible scars on the left side of M.M.'s face and on his neck.

2. Defense Case

Petitioner's wife testified that he was not a violent man.  She and petitioner knew about their daughter' relationship with M.M., and were scared for her both because of the age difference and because they knew M.M. had guns.  On May 20, 2015, petitioner left for work as usual; she did not know he was planning to see M.M. after work.

Petitioner testified that on the night of the attack, he went to speak with M.M. because he was afraid for his daughter.  He drove to the park because he knew, generally, where M.M. lived.  He took a gun and a knife with him, but the gun was not loaded; the knife was a steak knife from his kitchen.  He thought he might have to defend himself from M.M.

According to petitioner, he told M.M. he was afraid for his daughter.  M.M. said A.P. was fine and he did not want to talk to petitioner.  M.M. became loud and angry, and petitioner suggested they walk and talk so M.M. could calm down.  As they walked into the park, the conversation became more heated.  M.M. said A.P. was an adult, could make her own decision, and that they might get married.  This made petitioner angrier.

Petitioner saw M.M. reach toward his waistband; he thought M.M. was reaching for a gun and feared M.M. was going to kill him.  He told M.M., "Don't do it," but M.M. moved toward petitioner. Petitioner grabbed his knife from his back pocket and started to swing it back and forth; he did not remember how many times.  M.M. continued to approach, kicking at petitioner, and petitioner fell to the ground.  Petitioner tried to get up, lashing out with the steak knife.  He soon realized he had cut M.M.  Petitioner testified that he never took out his gun.

M.M. then ran off, and petitioner got up and went in the opposite direction.  He was scared and thought M.M. might come behind him and try to shoot him.  Petitioner dropped the knife as he ran away.  The police arrested petitioner a short time later.

C. Outcome

The jury found petitioner guilty of attempted murder and aggravated mayhem. They found true the allegation that, while committing aggravated mayhem, petitioner used a deadly weapon. Petitioner was sentenced to life with the possibility of parole for aggravated mayhem, plus another year for the use of a deadly weapon.[2] The court imposed and stayed the term for attempted murder.

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on April 22, 2019. Lodged Doc. 10 (ECF No. 14-10).[3] The California Supreme Court denied review on June 26, 2019. Lodged Doc. 14 (ECF No. 14-14).

Petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento County, which was denied by written order on October 18, 2019. Lodged Doc. 16 (ECF No. 14-16). Petitioner next filed a habeas petition in the California Court of Appeal, which was denied without comment or citation on November 15, 2019. Lodged Doc. 18 (ECF No. 14-18). Petitioner then filed a habeas petition in the California Supreme Court, which was denied on February 19, 2020. Lodged Docs. 19, 20 (ECF Nos. 14-19, 14-20).

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[2] The judge misspoke at sentencing, and his reference to the minimum seven year period that petitioner could expect to serve resulted in an abstract of judgment that incorrectly stated the sentence as seven years to life. The abstract was later corrected to reflect the statutorily required term. See Lodged Docs. 10 (ECF No. 14-10) (Opinion of California Court of Appeal) at 6; Lodged Doc. 12 (ECF No. 14-12) (Amended Abstract of Judgment).

[3] The court ordered a correction to the abstract of judgment regarding sentencing, as previously noted, but affirmed the conviction.

>   determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182.

5

Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

### I. Claim One: Ineffective Assistance of Counsel

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that trial counsel was ineffective in the following ways: (1) failing to contest the sufficiency of the evidence as to the aggravated mayhem charge; (2) failing to oppose the one-year enhancement under Cal. Penal Code § 12022(b)(1) on grounds that use of a weapon was an element of the primary offense of assault with a deadly weapon; and (3) committing failures that cumulatively violated petitioner's Sixth Amendment right to counsel. ECF No. 1 at 18, 25-26.

Petitioner separately alleges that appellate counsel was ineffective in the following ways: (1) failing to challenge the unauthorized § 12022(b)(1) enhancement on appeal; and (2) acting against petitioner's interests by raising the issue of the incorrect sentence for mayhem. Id. at 18, 26-28.

#### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

prong. Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

The right to effective assistance of counsel extends to a criminal appeal, and claims of appellate ineffectiveness are also governed by Strickland.  Evitts v. Lucey, 469 U.S. 387, 391 (1985); Smith v. Robbins, 528 U.S. 259, 285 (2000).  To demonstrate prejudice in the appellate context, petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's alleged errors.  Smith, 528 U.S. at 285-286.  Appellate counsel has no constitutional duty to raise issues which, in counsel's judgment, have little or no likelihood of success.  Jones v. Barnes, 463 U.S. 745, 751-53 (1983).

        C.   The State Courts' Rulings

This claim was presented to the California Supreme Court in a habeas petition that was denied without comment or citation.  See Lodged Docs. 19, 20 (ECF Nos. 14-19, 14-20).

The superior court issued a written order denying the same claim, reasoning as follows:

> First, Petitioner claims trial counsel was ineffective because he "failed to contest to the insufficiency of evidence used to sustain the conviction for aggravated mayhem."  Petitioner has not demonstrated specifically what counsel should have done that he did not do.
>
> Nor has Petitioner […] demonstrated prejudice. The claim is premised on Petitioner's tacit assertion there is insufficient evidence to support the conviction on Count Two, aggravated mayhem. In the direct appeal, Petitioner claimed, "his conviction for aggravated mayhem must be reversed because there was insufficient evidence he intended to maim M.M." (*Partida*, supra, 2019 Cal.App.Unpub. LEXIS 2762, *6.) The appellate court determined there was "sufficient evidence from which a reasonable jury could find defendant acted with the requisite intent to main M.M." (*Id.* at"p. 7.) Accordingly, there was no prejudice.
>
> Second, Petitioner alleges, "trial counsel failed to contest to the fact that the one year enhancement under Penal Code § 12022(b) (1) was unauthorized due to the fact that said 'use' of the weapon (was an element of the primary offense of Assault with a deadly weapon)." Contrary to Petitioner's claim, he was not charged with assault with a deadly weapon. Instead, he was charged with and convicted of attempted murder (§§ 664/187) and aggravated mayhem (§ 205). Neither offense of conviction has as an element that the defendant personally used a deadly or dangerous weapon. Accordingly, trial counsel was not ineffective for failing to contest the enhancement in the manner described by Petitioner. The claim fails.

> Third, Petitioner asserts appellate counsel rendered ineffective assistance because she "allowed" the one-year enhancement for section 12022(b)(1) to stand. As discussed above, there was no error in imposing the section 12022(b)(1) enhancement in this circumstance. Appellate counsel was not ineffective for declining to raise the claim in the direct appeal.
>
> Fourth, Petitioner argues appellate counsel was ineffective because she "caused petitioner to suffer an increased penalty." Petitioner seems to assert that the appellate court's order directing the trial court to correct the sentence resulted in an increased sentence. Substantively, Petitioner's sentence did not change. Section 205 defines the sentence for aggravated mayhem; it is "punishable by imprisonment in the state prison for life with the possibility of parole." (§ 205.) The trial court was required by statute to impose a sentence of "life with the possibility of parole." The Penal Code further provides that, "An inmate imprisoned under a life sentence shall not be paroled until he or she has served [] a term of at least seven calendar years. (§ 3046(a) (1).) Read together, a defendant convicted of aggravated mayhem must be sentenced to life with the possibility of parole and the defendant is eligible for parole consideration when he or she has served seven years. The trial court mistakenly phrased the sentence as "7 years to life." Appellate counsel conceded the error. The concession did not cause Petitioner to suffer an increased penalty. The claim is denied.

Lodged Doc. 16 (ECF No. 14-16) at 3-5.

### D. Objective Reasonableness Under § 2254(d)

#### 1. Applicability of the "Look Through" Presumption

The court must first determine which state-court decision serves as the basis for review. Under AEDPA, when more than one state court has adjudicated the applicant's claim, the federal court generally looks to the last "reasoned" decision. Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Thus, a state supreme court's summary denial of discretionary review, which generally does not state a reason for that denial, is not a "reasoned" decision under AEDPA, and the federal court must "look through" that unexplained decision to the last state court to have provided a "reasoned" decision. Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). The Ninth Circuit has applied the Ylst "look through" presumption in the context of California state habeas, finding that when the California Supreme Court summarily denies habeas relief but the superior court has issued a written decision denying the same claim, it is the superior court's reasoned decision that is subject to scrutiny under 28 U.S.C. § 2254(d). See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

The correctness of this approach is subject to debate following the California Supreme Court's clarification of its habeas procedures in Robinson v. Lewis, 9 Cal. 5th 883 (2020). In Robinson, the state court was answering a question certified to it by the Ninth Circuit regarding state habeas timeliness rules and so-called "gap delays" between petitions filed in the various state courts. In the course of answering the certified question, the California Supreme Court emphasized that when it exercises its original jurisdiction over a state habeas petition, it is reviewing a new petition and not whatever petition may have been considered below. Robinson, 9 Cal. 5th at 985-986. Accordingly, it is not reviewing any prior adjudications by lower courts. Id. at 986. This suggests that a silent rejection of claims implies no adoption of the reasoning of such lower court adjudication, which would appear to rebut any "look through" presumption that might otherwise apply. For these reasons, respondent takes the position that the decision of the California Supreme Court is the only state court adjudication subject to reasonableness review here. See ECF No. 31 at 15 n.5.

The only Ninth Circuit opinion to consider the impact of Robinson on application of the "look through" presumption is Flemming v. Matteson, 26 F.4th 1136 (9th Cir. 2022), which held inter alia that the "look through" presumption did still apply under the circumstances of that case. The court "looked through" silent rejections of petitioner's claims in the state appellate court to a reasoned decision of the superior court finding the claims untimely. Id. at 1143. The Flemming court found that Robinson supported this result. Id. This holding, however, is inapposite here. Flemming presented the question whether a federal petition was timely, which in the final analysis turned on whether the initial superior court petition had been untimely and thus failed to toll the federal statute of limitations. In this context, the Ninth Circuit concluded that later silent denials by higher state courts had not overruled or rejected the superior court's untimeliness finding. Robinson does indeed support that conclusion, because it establishes that each state court is making its own timeliness decision as to the claims before it.

The instant case does not involve the timeliness issues that gave rise to Robinson and to Flemming, and the Ninth Circuit has not abrogated its practice of applying the "look through" presumption to merits determinations of California state habeas petitions. This court need not

1  take a position on the ongoing validity of that approach.  Whichever state court decision is taken
2  as the basis for this court's review under § 2254(d), it is readily apparent that there was no
3  objectively unreasonable application of clearly established federal law.

                    2.    Substantive Reasonableness of State Court Rulings

5          The superior court expressly applied the correct Strickland standard, and it rejected
6  petitioner's claims of ineffective assistance at trial based on the lack of prejudice.  This approach
7  is not only permitted but required by clearly established federal law.  See Strickland, 466 U.S. at
8  697.  Petitioner cannot possibly establish prejudice from a failure to challenge the sufficiency of
9  evidence[4] when the California Court of Appeal affirmatively found the evidence to be sufficient
10 as a matter of law to support his mayhem conviction.  See Lodged Doc. 10 (ECF No. 14-10) at 4-
11 6.  The latter determination, which involves interpretation and application of the California
12 mayhem statute, is binding on this court.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per
13 curiam) (state court's interpretation of state law is binding on federal habeas court).  Moreover,
14 "the failure to take a futile action can never be deficient performance[.]"  See Rupe v. Wood, 93
15 F.3d 1434, 1445 (9th Cir. 1996).  Accordingly, the California Supreme Court could have
16 reasonably rejected this claim on either performance or prejudice grounds.

17         The superior court also reasonably concluded that petitioner had not established prejudice
18 from any failure to object to the Penal Code § 12022(b)(1) enhancement as double counting.  It
19 was not double counting, as neither attempted murder (Cal. Penal Code §§ 664, 187) nor
20 aggravated mayhem (§ 205) includes use of a weapon as an element of the offense.  Accordingly,
21 such a motion or objection in the trial court would have been futile.  See Rupe, supra; Boag v.
22 Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not
23 constitute ineffective assistance.").  For the same reason, petitioner's appellate ineffectiveness

---

[4] It is unclear what petitioner means by this conclusory allegation.  A defense was presented at trial, and counsel argued that the evidence did not support conviction under the reasonable doubt standard.  2 RT 583-3 RT 621.  Counsel argued generally that petitioner acted in self-defense and lacked criminal intent, an argument that went equally to attempted murder and to mayhem.  He also emphasized the failure of proof regarding intent as to the mayhem count specifically.  3 RT 618-619.  There was no act or omission by trial counsel that forfeited the sufficiency of evidence issue for purposes of appellate review.

claim on the same ground also fails. There can be prejudice without a showing that petitioner would have prevailed on appeal, Smith, 528 U.S. at 285-286, and it is clear that this claim would have failed on appeal.

Finally, it was reasonable of the superior court to reject the claim that appellate counsel rendered ineffective assistance by causing an increase in petitioner's sentence. It is plain from the record that all counsel did was concede—as professional ethics required—an error in the abstract of judgment that followed the sentencing court's ambiguous statement on the record as to the sentence for mayhem. The statute required a sentence of life with the possibility of parole. Accordingly, the superior court is entirely correct that there was no "increase" in the sentence, there was merely a correction of an error in the paperwork. Even if this court were to assume that petitioner might have achieved early release based on the erroneous abstract of judgment, he cannot use that to establish prejudice because is not entitled to a windfall that is contrary to law. See Lockhart v. Fretwell, 506 U.S. 364, 366, 372 (1993) (no prejudice where "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.").

Even if the superior court's order is not the state court adjudication subject to direct review under § 2254(d), the above discussion identifies reasons that the California Supreme Court may have had for summarily rejecting petitioners IAC claim. See Richter, 562 U.S. at 102 (when state supreme court denies relief without explanation, federal court must identify arguments or theories that may have supported the decision and subject those to § 2254(d) scrutiny). And because there were reasonable grounds to reject petitioner's first two allegations of ineffectiveness of trial counsel, his cumulative ineffectiveness allegation was also reasonably rejected. Because these potential grounds for decision involve no objectively unreasonable application of Strickland, AEDPA bars federal habeas relief.

II.   Claim Two: Double Jeopardy and Sentencing Enhancements

A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that the trial court erred by imposing the one-year sentencing enhancement under Cal. Penal Code § 12022(b)(1), because use of the weapon was an element of

11

the crime of attempted murder with a deadly weapon. Petitioner alleges further that the trial court violated his right against double jeopardy by sentencing him twice on the mayhem charge, first at the initial sentencing hearing and then to a higher term following appeal. ECF No. 1 at 19.

### B. The Clearly Established Federal Law

Sentencing is governed by state law, and errors related to the application of state law do not support federal habeas relief. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). A state sentencing error violates a defendant's federal constitutional rights, and supports habeas relief, only where the error is "so arbitrary or capricious as to constitute an independent due process violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992).

The Double Jeopardy Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment, prohibits retrial following acquittal, Benton v. Maryland, 395 U.S. 784 (1969), and re-prosecution for the same offense after conviction, North Carolina v. Pearce, 395 U.S. 711, 717 (1969). It also protects again multiple punishments for the same offense. Pearce, 395 U.S. at 717. It prohibits neither retrial after a conviction has been set aside on appeal or collateral attack, nor resentencing on remand—even to a harsher sentence than originally imposed. See Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003).

### C. The State Court's Ruling

The superior court denied this claim as follows:

> … Petitioner contends the trial court erred when it imposed the section 12022(b) (1) because, according Petitioner, use of a weapon is an element of the underlying offense. As discussed above, neither attempted murder nor aggravated mayhem has as an element that the defendant personally used a deadly or dangerous weapon. Accordingly, the claim fails.
>
> Finally, Petitioner alleges the "second sentence of life-with-the possibility of parole" imposed following the direct appeal was a "violation of the petitioner's Fifth Amendment to the U.S. Constitution" where it stated that "No person shall be subject for the same offense to be twice put in jeopardy of life or limb." Petitioner claims the correction on July 18, 2019, violated the Double Jeopardy clause of the Fifth Amendment. The court did not impose a "second sentence" as alleged by Petitioner. Rather, the trial court corrected the abstract of judgment. Nor was the sentence increased. The substantive sentence remains the same. Petitioner was not denied his Fifth Amendment protection against double jeopardy.

Lodged Doc. 16 (ECF No. 14-16) at 5.

The California Supreme Court denied the claim without comment or citation. Lodged Doc. 20 (ECF No. 14-20).

### D. Objective Reasonableness Under § 2254(d)

The superior court's adjudication of these issues involved no unreasonable application of clearly established federal law. Petitioner's direct challenge to the weapon enhancement presents no federal constitutional question. As previously noted, the superior court's rejection of the related IAC claim rested on the observation that the enhancement was properly applied as a matter of state law. That appears to be quite correct, and in any case is a determination of state law that is not reviewable here. See Lewis, 497 U.S. at 780 (1990); Bradshaw, 546 U.S. at 76. The allegedly incorrect application of state sentencing law does not present a cognizable basis for federal habeas relief. Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). And any putative due process argument would fail because no clearly established Supreme Court precedent prohibits the challenged sentencing practice. See John-Charles v. California, 646 F.3d 1243, 1253 (9th Cir.), cert. denied, 565 U.S. 1097 (2011).

As for the double jeopardy issue, quite apart from the fact that what happened was error correction rather than resentencing, the Double Jeopardy Clause does not prohibit resentencing. See Monge v. California, 524 U.S. 721, 728 (1998) (double jeopardy protections are inapplicable to sentencing, because "the determinations at issue do not place a defendant in jeopardy for an offense" as would a trial). Accordingly, the premise of petitioner's claim fails as a matter of law. Petitioner has cited and the undersigned is aware of no U.S. Supreme Court precedent that could plausibly support the theory that the correction of the abstract of judgment in this case implicated double jeopardy or any other constitutional protection. Absent clearly established federal law governing the claim, federal habeas relief is unavailable. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law).

////

Accordingly, no state court can have unreasonably rejected petitioner's claim, and AEDPA bars relief.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 8, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE